## Staunton

VIRGINIA ELECTRIC AND POWER COMPANY v. CHARLES C. PATTERSON, ET AL.

September 11, 1963.

Record No. 5601.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*Walter J. McGraw* (*E. Milton Farley, III; George D. Gibson; Hunton, Williams, Gay, Powell & Gibson*, on brief), for the appellant.

No printed brief filed on behalf of the appellees.

Buchanan, J., delivered the opinion of the court.

On June 16, 1961, appellant, Virginia Electric and Power Company, filed its petition to condemn a perpetual right of way and easement 150 feet wide through two tracts of land in the city of Hampton, one owned by Charles C. Patterson and the other by Eula Patterson Link.

The purpose of the easement was to lay, construct, operate and maintain one or more pipelines for the transportation of natural gas, petroleum products or other liquids, and one or more cable lines for the transmission and distribution of electric power. The pipe and cable lines were to be laid underground so as not to interfere with the cultivation of the land. The pipe would be of steel approximately a quarter of an inch thick with an outside diameter of 12 3/4 inches and laid three feet under the surface, but having valves at intervals with valve caps at surface level.

The company would have the right to keep the right of way clear of all buildings or structures (except fences), trees and undergrowth, and the right of ingress and egress over private roads on the property of the owners, or if none reasonably convenient then over their property to private or public roads, the company to be liable for all damages resulting from the use thereof.

The owners were to have the right to use the land within the right of way for any purpose not inconsistent with the easement, were not to erect buildings or other structures on the right of way, but could build roads and streets thereon subject to the right of the company to cut through them in the construction and operation of its facilities.

The underground easement so sought to be acquired was entirely within a surface easement of the same width and length which had been obtained by the company in 1946 for the erection and maintenance of poles and towers to carry its electric transmission lines, with rights of ingress and egress for those purposes.

Pursuant to the petition commissioners were appointed and instructed to ascertain just compensation to the owners for the easement taken and damages, if any, to their adjacent or other property. They viewed the premises, heard the evidence and rendered their report awarding $5,000 to Charles C. Patterson for the easement taken over his land, and $1,500 to Eula Patterson Link as compensation for the

easement over her land, but no amount was allowed to either for damage to the residue of the land.

The company filed exceptions to the report and asked that the awards be set aside and new commissioners appointed on the grounds that the awards were grossly excessive, were based on erroneous principles, arrived at in an improper manner and contrary to instructions. It prayed that the court require the commissioners to appear and advise the court as to how they made their awards.

The court denied the prayer, overruled the exceptions and confirmed the award by decree (order—see *Dove* v. *May*, 201 Va. 761, 762-3, 113 S.E.2d 840, 841) entered June 8, 1962, from which the company appeals. It contends that the awards should be set aside because the commissioners disregarded the prior easement owned by the company; or in the alternative that the order be reversed and the commissioners summoned and examined.

The land belonging to Charles C. Patterson is designated as Parcel No. 2-A, contains 99.382 acres and on its north end fronts about 750 feet on Saunders Road. The easement right of way extends across its southern end a distance of 1447.29 feet, is 150 feet wide, as stated, and contains 4.984 acres.

The land belonging to Eula Patterson Link is designated as Parcel No. 2-B, contains 49.5 acres and has no road frontage, but a 25-foot road extends from it to a city street. The easement right of way extends across the north end of the tract a distance of 416.61 feet and contains 1.435 acres.

The company employed W. T. Quinn, Jr., and J. B. Morgan, both engaged in the real estate business in the city of Hampton, to make appraisals of the property involved, and ascertain a just compensation for the land taken and damages, if any, to the residue. Both testified before the commissioners that they were experienced in making appraisals of real estate and were familiar with the Patterson and Link properties.

Quinn testified that a just compensation for the easement taken in Parcel 2-A, belonging to Charles C. Patterson, was $125, and for the easement taken in Parcel 2-B, belonging to Eula Patterson Link, was $29.

Morgan testified that just compensation to Patterson for the easement taken in Parcel 2-A was $124.60, and to Mrs. Link for the easement taken in Parcel 2-B was $25.11. Both testified that there was no damage to the residue of the land of either owner.

Both witnesses explained in detail the methods used by them in making their appraisals. Quinn valued the land in Parcel 2-A outside the easement at $1,000 an acre, on the basis of his knowledge and of recent sales of comparable properties, stating that the highest and best use of the land was for residential building and that it was in an area zoned by the city as one-family residential suburban district. In his opinion the land in the easement right of way was worth only one-fourth as much as the rest of the tract, or $250 an acre, because of the surface easements already owned by the company, under which no building could be erected thereon, and the underground easement would depreciate its value only ten percent, or $125, for the 4.494 acres in the easement.

Quinn valued the land in Parcel 2-B owned by Mrs. Link, outside of the easement, at $750 an acre, due to the fact that it had no highway frontage; and on the same basis and the same method as employed with respect to Parcel 2-A he testified, as stated, that just compensation to Mrs. Link for the easement taken was $29.

Morgan, the other appraiser, valued the land within the easement on Parcel 2-A at $250 an acre, and the land within the easement on Parcel 2-B at $175 an acre, taking into consideration the existing easement for electric transmission lines. He agreed with Quinn that the additional underground easement would depreciate the value only ten percent.

The owners of the property were not represented by counsel. Mrs. Link did not testify and their only witness was Charles C. Patterson. In response to an inquiry by the court as to whether he wanted to say anything about the value of the land, Patterson said:

"Well, the way land is selling and all, the deeds that's—published in the paper of various pieces of land around about, I'd say that land is worth $2,000.00 an acre and more for subdivision purposes."

Thus, while the commissioners and the two witnesses for the company agreed that there was no damage to the residue of the property, there is a very wide difference between them as to what is just compensation for what is taken. The commissioners allowed a total of $6,500 and the two witnesses for the company said the total should not exceed $154. A difference of that magnitude could hardly result from a mere difference of opinion about the value of the same property.

We have frequently said, and recently repeated, that the finding of the commissioners in a condemnation proceeding is entitled

to great weight, and where the evidence is conflicting their report will not be disturbed except upon clear proof that it is based on erroneous principles or when the awards are so grossly excessive or inadequate as to show bias, prejudice or corruption; and this is because the commissioners may base their findings on facts obtained by their own view of the property which do not appear in the record. *Brown v. May*, 202 Va. 300, 307, 117 S.E. 2d 101, 106-7.

The commissioners are not bound by the opinion of experts, or by the apparent weight of the evidence, but may give their own conclusions based upon their view of the land. At the same time, they may not take arbitrary or capricious action and return awards not related to the value of the property. Their awards are to be measured by the evidence and if the evidence clearly shows them to be unreasonable they should be set aside. *Virginia Electric, etc., Co. v. Pickett*, 197 Va. 269, 276, 89 S.E.2d 76, 81.

The commissioners are to ascertain what will be a just compensation for the interest or estate proposed to be taken, with damage, if any, to other property. Code 1950, § 25-17. (*Cf.* § 25-46.20, 1962 Cum. Supp.)

In one of the fourteen instructions given by the court, the commissioners were properly told that they should include in their awards only such amount as would fairly compensate the owners for the rights and privileges acquired in their proceeding and not already owned by the company under its easement previously acquired.

If it may be said that the awards here are within the range of the testimony of Patterson quoted above, which is at least doubtful, yet "they are far in excess of that of witnesses for the condemner. Only by an examination of the commissioners could it be ascertained whether they had given proper consideration to the effect of the prior easements of the Virginia Electric & Power Company and the court's instruction with respect thereto." *Commonwealth Natural Gas Corp. v. Horner*, 200 Va. 824, 831, 108 S.E.2d 403, 408.

The trial court should have granted the prayer of the petitioner and required the commissioners to attend and advise the court "as to the manner in which the report was formulated," as provided by Acts 1956, ch. 563, p. 926, codified as § 25-18.1 of the 1950 Code, quoted in the *Horner* case, *supra*, and as interpreted therein, 200 Va. at 832, 108 S.E.2d at 408.*

---

* As stated, this suit was instituted in 1961. By Acts 1962, ch. 426, p. 686, effective June 29, 1962, Title 25 of the 1950 Code was repealed and the "Virginia General Condemnation Act" was enacted as § 25-46.1 through § 25-46.34. Section 25-46.21

For this error the final order complained of is reversed, the judgment is set aside and the case is remanded for further proceedings consistent herewith.

*Reversed and remanded.*

---

thereof relates to the summoning and examining of the commissioners. The Act specifically provides, however, that it shall not apply to any condemnation proceeding instituted prior to the effective date of the Act.