JUSTICE COMPTON,
with whom CHIEF JUSTICE CARRICO joins, dissenting.
“In Virginia, the doctrine of stare decisis is more than a mere cliche. That doctrine plays a significant role in the orderly administration of justice by assuring consistent, predictable, and balanced application of legal principles. And when a court of last resort has established a precedent, after full deliberation upon the issue by the court, the precedent will not be treated lightly or ignored, in the absence of flagrant error or mistake.” Selected Risks Ins. Co. v. Dean, 233 Va. 260, 265, 355 S.E.2d 579, 581 (1987).
Here, the majority gives light treatment to settled precedent and in the process disregards a rule of appellate review that has been followed in this Court in case after case for the last 20 years. While laboring to put a gloss on the existing standard governing *265 how we review a trial court’s order of remittitur of a compensatory damage award, a standard the majority apparently does not like, it effectively has overruled a portion of Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897, 224 S.E.2d 323 (1976).
The issue in the case is whether the trial court correctly required the plaintiff to remit part of the jury verdict for both compensatory and punitive damages and to accept judgment for the reduced sum.
Appellant Charles B. Poulston, Jr., filed this action against appellee Bobby Rock seeking compensatory and punitive damages for defamatory oral statements made to representatives of plaintiffs employer. According to the motion for judgment, defendant maliciously and falsely stated that plaintiff had given defendant “bolts which were the property of DuPont Corporation” and that plaintiff had “fabricated a motorcycle part of cast iron out of DuPont materials,” using that part on plaintiffs motorcycle. Responding, defendant denied the allegations.
At trial, a jury found for the plaintiff and awarded compensatory damages of $10,000 and punitive damages of $25,000. The defendant moved to set the verdict aside, arguing that the amount of the damages was excessive.
Subsequently, the trial court, in a letter opinion, granted defendant’s motion and remitted 90% of the award pursuant to Code § 8.01-383.1(A) (authorizes trial court to order remittitur and provides for appellate review if plaintiff accepts reduced sum under protest). We awarded the plaintiff this appeal from the March 1995 order entering judgment for the plaintiff for $1,000 in compensatory damages and $2,500 in punitive damages.
According to settled principles of appellate review, I shall state the facts in the light most favorable to the plaintiff, who prevailed before the jury. Plaintiff, a welder employed by DuPont, and defendant were acquainted. Both shared an interest in the hobby of constructing, displaying, and riding custom-made motorcycles.
In January 1993, plaintiff had obtained a judgment for approximately $2,200 against defendant arising from a dispute between the parties over painting performed by defendant on plaintiffs motorcycle. On May 7, 1993, defendant was served with a summons in garnishment, requested by plaintiff in an effort to collect the judgment.
On May 7, following service of the summons, defendant made a telephone call to a DuPont labor relations manager in an effort *266 “to get even with” plaintiff. Defendant stated “that he knew an employee at DuPont by the name of Poulston who had taken stainless steel bolts from DuPont” for use in building motorcycles. Defendant also stated that plaintiff fabricated motorcycle parts while on the job at DuPont, using its materials. Defendant testified that, at the time he made the call, he “hope[dj” plaintiff would be “fired” from his job because, according to defendant, plaintiff had “lied so much” during the prior litigation.
DuPont conducted an investigation into defendant’s charges, which plaintiff “adamantly denied.” Defendant’s statements became part of a permanent DuPont record and were disseminated to a number of DuPont employees. Eventually, DuPont concluded that the statements were false. Also, about the same time in an incident in a local restaurant, defendant, in a voice loud enough to be heard by others, accused plaintiff of being a liar and a thief.
The trial court, in the letter opinion granting defendant’s motion to set aside the verdict, discussed the evidence about the effect the defamatory remarks had upon the plaintiff. When learning about defendant’s call to the labor relations manager, plaintiff appeared not to take the matter seriously, and smiled and laughed about it. Plaintiffs witnesses testified that they did not believe defendant’s accusations and had the same high regard for the plaintiff after the incident as before. Witnesses described plaintiffs present reputation for honesty and integrity as “immaculate” and as “A-l.” The court pointed out, “Defendant’s accusation did not adversely affect plaintiffs employment status or cause diminution in his salary or benefits. No evidence was presented that plaintiff sought medical treatment or suffered any physical or emotional injuries as a result of defendant’s actions although plaintiff testified that his fellow employees kidded him about the matter.”
The trial court reviewed pertinent cases, noted that the defamatory statements were actionable per se, and observed that here damages for injury to reputation were presumed, the plaintiff not being required to show actual pecuniary loss to recover compensatory damages. The court then ruled “that the amount of compensatory damages awarded in this case is shockingly excessive.” The court stated that “the size of the compensatory damage award is without support in the evidence, and grossly in excess of the actual injuries suffered, and thus should be reduce [d] to $1,000.”
*267 Addressing the punitive damage award, the trial court also reviewed the applicable principles. The court said that “the jury could have reasonably found the requisite level of malice to justify an award of punitive damages.” Nevertheless, the court continued, the award of $25,000 was excessive, “in light of the purpose punitive damages are to serve,” that is, “to punish the wrongdoer and deter others from committing like offenses.” The court said the award of punitive damages “bears no reasonable relation to the real damages sustained by plaintiff.” Concluding, the court decided that “based both on the lack of evidence of real damage suffered and the reduction in the amount of the compensatory award, . . . the court will reduce the amount of punitive damages to $2,500.”
On appeal, the plaintiff contends the trial court erred by remitting both the compensatory and punitive damage awards. He asks that the court’s action in ordering the remittitur be reversed and that final judgment be entered in accordance with the jury’s verdict.
First, I shall address the issue of compensatory damages. The applicable standard of appellate review to be applied is critical to a resolution of this issue. The development of the present standard in remittitur cases has an interesting history.
Trial courts are clothed with the authority, and charged with the duty, to correct verdicts in damage suits that plainly appear to be unfair. Edmiston v. Kupsenel, 205 Va. 198, 202, 135 S.E.2d 777, 180 (1964). “The use of this authority is but the exercise of the inherent discretion of the trial courts, limited by the admonitory principle that it is the jury’s function, ordinarily, to assess damages.” Id. Prior to 1976, the manner in which the appellate court judged whether the trial court had abused its discretion was to focus on the jury’s verdict. “The crucial question to be determined ... is whether there was evidence to sustain the verdict of the jury, for if there was, then the trial court was in error in ordering the remittitur.” Id. at 203, 135 S.E.2d at 780.
In 1976, the rule was changed in Bassett, and the present rule adopted. The basic consideration is still whether there has been an abuse of judicial discretion. But the manner in which this Court judges abuse of discretion was altered. From 1976 until today, the focus has been upon the award of the trial court after the remittitur and not upon the verdict of the jury. Until today, the impor *268 tant number has been the trial judge’s number, not the jury’s number.
In Bassett, we affirmed a trial court’s order of remittitur. There, the standard of appellate review was at issue. The plaintiff, seeking reinstatement of the verdict, argued “it is the appellate function to decide whether the jury’s verdict was ‘excessive as a matter of law.’ ” Id. at 910, 224 S.E.2d at 331. The defendant, seeking affirmance of the trial court’s reduced award, argued “that the appellate function is to determine whether the order was an ‘abuse of discretion’ on the part of the trial court.” Id. In ruling on the question, and quoting from Smithey v. Sinclair Refining Co., 203 Va. 142, 148, 122 S.E.2d 872, 877 (1961), we emphasized that the “ultimate test” in reviewing a trial court’s order of remittitur is whether judicial discretion has been abused. Bassett, 216 Va. at 911, 224 S.E.2d at 332.
We went on to hold, however, that the manner in which this Court judges abuse of discretion is to focus on the “recovery after remittitur,” that is, the trial judge’s number and not the jury’s number. We said that when a trial judge has made a finding of excessiveness, has ordered remittitur, and has made “a reasoned evaluation” of the damages as shown by the evidence, the judge’s “order will not be disturbed on appeal if the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence. ‘Reasonableness’ in this context is the standard by which the exercise of discretion must be tested in this Court.” Id. at 912, 224 S.E.2d at 332.
This focus on the “recovery after remittitur” has been the touchstone of every decision on the subject since Bassett — until today. See, e.g., Caldwell v. Seaboard System R.R., Inc., 238 Va. 148, 158, 380 S.E.2d 910, 915 (1989), cert. denied, 493 U.S. 1095 (1990) (“we cannot say the trial court’s reduction of the jury’s award was unreasonable”); J.W. Creech, Inc. v. Norfolk Air Conditioning Corp., 237 Va. 320, 329-30, 377 S.E.2d 605, 610-11 (1989); Robinson v. Old Dominion Freight Line, Inc., 236 Va. 125, 128-29, 372 S.E.2d 142, 143-44 (1988); Richmond Newspapers, Inc. v. Lipscomb, 234 Va. 277, 301, 362 S.E.2d 32, 45 (1987), cert. denied, 486 U.S. 1023 (1988) (“we will not disturb [the trial court’s] finding because ‘the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence’ ”); Hogan v. Carter & Grinstead, 226 Va. 361, 372-73, 310 S.E.2d 666, 672 (1983); Ford Motor Co. v. Bartholomew, *269 224 Va. 421, 436, 297 S.E.2d 675, 683 (1982) (“We believe that, in keeping with the rule in Bassett Furniture, the trial judge made a ‘reasoned evaluation of the damages’ and that ‘the recovery after remittitur bears a reasonable relation’ to those damages”); Bunch v. State Highway & Transp. Comm’r, 217 Va. 627, 631, 231 S.E.2d 324, 327 (1977) (“In these circumstances, the award after remittitur bears a reasonable relation to the damages disclosed by the evidence. . . “).
The rule in Bassett is clear. In plain words, a unanimous Court said that our review of the exercise of the trial court’s discretion under these circumstances is limited to whether “the recovery after remittitur bears a reasonable relation to the damages disclosed by the evidence.” The majority, professing to focus upon the reasonableness of the recovery after remittitur, alludes to a “determination” this Court must make regarding whether “the verdict was excessive.” It will be remembered that the party losing the remittitur issue in Bassett argued “it is the appellate function to decide whether the jury’s verdict was ‘excessive as a matter of law.’ ” Then, the majority proceeds to substitute its judgment for that of the trial court to arrive at a decision it would have rendered had it sat at the trial level.
The precise issue in the present case, in my view, should be whether the compensatory damage award of $1,000 bears “a reasonable relation” to the damages disclosed by the evidence. I conclude that the amount bears such a reasonable relation.
Of course, the plaintiff is entitled to an award of compensatory damages that includes a sum for presumed injury to reputation even though, as the trial court noted, there was no proof, or inference, that the plaintiff’s reputation was diminished in any way by defendant’s statements. But this presumed injury is slight. The plaintiff’s witnesses said they did not believe defendant’s accusations, and held plaintiff in the same high esteem after learning of defendant’s charges as before. Moreover, plaintiff suffered no monetary loss, remained employed at DuPont, incurred no diminution in wages or fringe benefits, and continued to be held in high regard by his superiors. Finally, plaintiff presented no evidence that he suffered any physical or emotional injury, except for some embarrassment sustained by good-natured joking of his friends. See The Gazette, Inc. v. Harris, 229 Va. 1, 48, 325 S.E.2d 713, 744-45, cert. denied sub nom. Fleming v. Moore, 472 *270 U.S. 1032 (1985). Thus, I cannot say that an award of $1,000 is unreasonable, considering the evidence.*
Next, I shall turn to the issue of punitive damages. Generally, the imposition of punitive damages is not favored and, because they are in the nature of a penalty, they should be assessed only in cases of most egregious conduct. Owens-Corning Fiberglas Corp. v. Watson, 243 Va. 128, 144, 413 S.E.2d 630, 639 (1992). And, the punitive damage award “should bear some reasonable proportion to the real damages sustained and to the measure of punishment required.” Stubbs v. Cowden, 179 Va. 190, 201, 18 S.E.2d 275, 280 (1942).
The majority correctly recognizes that we must determine whether the trial court acted “improperly.” Nevertheless, they determine that the jury’s award was not “unreasonable” and is not “an inappropriate punishment” for defendant’s conduct. This is another example of disregard for a settled standard of appellate review.
Certainly, this defendant’s conduct was egregious and supported the finding that the statements were uttered with the requisite malice. However, given the lack of real damages sustained by the plaintiff and considering the sum I would approve for compensatory damages, I cannot say, from a review of this record, that the trial court acted “improperly” in fixing the punitive damages at $2,500.
Consequently, I would affirm the trial court’s judgment.

 Citizens of the Commonwealth, especially those supporting a family on a tight budget, will be surprised to learn from the majority that the sum of $1,000 is “a nominal or trivial amount.”